**GREGORY P. WONG (SBN: 204502)**
**ADEPT EMPLOYMENT LAW, APC**
10880 Wilshire Boulevard, Suite 1101
Los Angeles, CA 90012
Telephone: (213) 505-6283
Facsimile: (213) 947-4584
Email: greg.wong@adeptemploymentlaw.com

**Attorneys for Plaintiff**
**Donald Slaughter, Sr. and SF Trust LLC**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| DONALD SLAUGHTER, Sr., an Individual; SF TRUST, LLC, a Florida Limited Liability Corporation;<br><br>Plaintiffs,<br><br>vs.<br><br>Penthouse Global Media, Inc., a Delaware Corporation; Kelly Holland, an Individual.<br><br>Defendants | **CASE NO.:**<br><br>**COMPLAINT FOR:**<br><br>1. **Breach of Written Employment Contract;**<br><br>2. **Breach of Written Consulting Agreement;**<br><br>3. **Breach of Written Agreement;**<br><br>4. **Breach of Implied Covenant of Good Faith and Fair Dealing;**<br><br>5. **Wrongful Termination;**<br><br>6. **Failure to Pay Wages;**<br><br>7. **Failure to Provide Wage Statements (Labor Code Sec. 226);**<br><br>8. **Waiting Time Penalties;**<br><br>9. **Breach of Fiduciary Duty;**<br><br>10. **Defamation.**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff Donald Slaughter, Sr. (hereinafter "Slaughter" or "Plaintiff Slaughter") and SF Trust, LLC (hereinafter "SF Trust" or "Plaintiff SF Trust" and, together with Slaughter referred to as "Plaintiffs") allege and state as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this action and the matters alleged herein pursuant to the following statutes: (a) Diversity jurisdiction pursuant to 28 U.S.C. §1332(a); and Supplemental jurisdiction pursuant to 28 U.S.C. §1367.

2.     At all times relevant herein, Plaintiff Slaughter was, and is, an individual residing in the State of Florida.

3.     At all times relevant herein, SF Trust was, and is, a Limited Liability Corporation organized under the Laws of the State of Florida with principal place of business in Florida.

4.     Defendant Penthouse Global Media, Inc. ("Defendant Penthouse" or "PGMI") is a Delaware corporation with principal place of business in Chatsworth, California.  Defendant Penthouse is an adult entertainment brand that conducts business in the broadcast, publishing, licensing and digital spaces.

5.     Plaintiffs are informed and believe and thereon allege, Defendant Kelly Holland ("Defendant Holland") is an individual residing in the State of California.  Defendant Holland is the CEO and majority shareholder of Defendant Penthouse.

6.     The amount in controversy herein exceeds the sum or value of $75,000.00 and will be established according to proof at trial.

7.     This Court has jurisdiction over Defendant Penthouse and Defendant Holland, because, upon information and belief, Defendants have sufficient minimum contracts in California or otherwise intentionally avail themselves of the California market so as to render the exercise of jurisdiction over them by this Court consistent with traditional notions of fair play and substantial justice.

8.     Venue is proper in this judicial district, because, upon information and

belief, each of the named Defendants resides, transacts business, or has offices in this county, and/or the acts or omissions that gave rise to this Complaint occurred in this judicial district.

## FACTS COMMON TO ALL CAUSES OF ACTION

9.    **Slaughter Hired to Facilitate Acquisition of Penthouse Brand and Companies:** On or about May of 2015, Plaintiff Slaughter, a finance professional by trade, was contacted by Defendant Holland regarding her intention to acquire the Penthouse family of companies from their current owner, Friend Finder Networks, Inc. ("FFN"). Defendant Holland had negotiated the purchase of these companies, but was not able to finance the acquisition and was desperate to find any lender or investor who would be willing to back the deal. Plaintiff Slaughter and Defendant Penthouse, acting through Defendant Holland, entered into an agreement under which Plaintiff Slaughter would apply his expertise in order to obtain financing for the acquisition and, in exchange, Plaintiff Slaughter would receive consideration that included five percent of the total price of the transaction upon the successful close of escrow. However, by the time Plaintiff Slaughter was brought on board, FFN had terminated the escrow and was pursuing other potential deals. Defendant Holland instructed Plaintiff Slaughter to continue to work on the acquisition and had him perform a number of duties including assembling a financing facility or "syndicate," working on a post-acquisition plan, negotiating and drafting a Master License Agreement with Robert Gans, and advising Defendant Holland on every aspect of the transaction. In November of 2015, FFN agreed to sell to Defendant Penthouse. At this time, Defendant Holland approached Plaintiff Slaughter about revising the terms of his engagement. Thereafter, Defendant Holland (in her individual capacity), Defendant Penthouse, and Plaintiff Slaughter entered into a written agreement that provided, *inter alia*, that Plaintiff Slaughter would be paid a commission equal to 1.5% of the total acquisition price upon the close of escrow (the "Acquisition Financing Agreement," a true and correct copy of which is

attached hereto as Exhibit A).  Plaintiff Slaughter worked quickly to muster the financing needed to make sure the deal did not fall through a second time.  He assembled the financing facility/syndicate and Defendant Penthouse was able to leverage the syndicate into a loan with another firm.  The acquisition of the Penthouse companies from FFN closed on or about February 19, 2016.  The total value of the acquisition transaction was approximately $9.5 million, making the amount owed to Plaintiff Slaughter at closing approximately $142,000.00.  To date, Defendants have paid Plaintiff Slaughter approximately $36,000 of the amount owed under the Acquisition Financing Agreement. The remaining balance has never been paid.

10.    **Plaintiff Slaughter Hired as an Employee by Defendant Penthouse and Terminated Before End of Employment Term:**  In December of 2015, Defendant Holland offered Plaintiff Slaughter employment with Defendant Penthouse.  After discussing his role and compensation, Plaintiff Slaughter and Defendant Penthouse entered into a written Employment Agreement on February 23, 2016.  A true and correct copy of the Employment Agreement is attached hereto as Exhibit B.  Pursuant to the Employment Agreement, Plaintiff Slaughter received a base annual salary of $65,000.00.  The Offer of Employment further provided, "Your employment is for 5 years from the date of hire."  There are no provisions in the Employment Agreement stating that Plaintiff Slaughter would be an at-will employee and there are no provisions granting Defendant Penthouse the ability to terminate Plaintiff Slaughter's employment for any reason, including "good cause," prior to the expiration of the five-year term.  Plaintiff Slaughter accepted the Employment Agreement on February 23, 2016.

11.    **Defendant Penthouse Enters Into Consulting Agreement With Plaintiff SF Trust LLC:** At the same that Plaintiff Slaughter and Defendant Penthouse were discussing terms of employment for Plaintiff Slaughter, they also negotiated a consulting agreement between Defendant Penthouse and Plaintiff SF

Trust, LLC.  This agreement was formalized into a written "Consulting Agreement" effective February 19, 2016 and executed by Plaintiff Slaughter and Holland on or around that date.  A true and correct copy of the Consulting Agreement is attached hereto as Exhibit C.  Pursuant to the Consulting Agreement, Plaintiff SF Trust was to provide the following services:

> a. Establish and implement written strategic growth plans for the Client and its affiliated organizations which shall be consistently updated and kept current;
>
> b. Identify and facilitate the development of new business relationships across the Client's business units, including without limitation, corporate, broadcast, licensing, publishing, and digital matters (which shall include the securing of potential contracts); and
>
> Other services as so agreed to by the parties.

In exchange for these services, Plaintiff SF Trust was to be paid seven thousand five hundred dollars on a monthly basis.  The Consulting Agreement provides, "The term of this Agreement shall be five years."  It does not contain any provisions allowing for termination of the Consulting Agreement prior to the expiration of the five-year term.

12.   **Plaintiffs Perform Under their Respective Agreements:** Between February 2016 and September 2017, Plaintiffs Slaughter and SF Trust performed all duties required under their respective written agreements with Defendant Penthouse. Plaintiff Slaughter's accomplishments during this period included reorganizing an unwieldly network of 16 companies into four business unit subsidiaries under Penthouse Global Media, Inc. and building an entire corporate infrastructure for Defendant Penthouse including establishing general operations, obtaining insurance, and establishing key operational departments such as accounting, human resources, and finance.  Plaintiff Slaughter also negotiated both

1   an extension and a reduction in interest rate of Defendant Penthouse's operational
2   loan.    Acting in his business development role as Plaintiff SF Trust, Plaintiff
3   Slaughter closed the sale of Defendant Penthouse's Master Club license and was
4   responsible for a number of additional initiatives to strength and expand Defendant
5   Penthouse's business.   In March of 2017, in recognition of these accomplishments,
6   Defendant Penthouse bonused Plaintiff SF Trust $20,000 and increased its monthly
7   payment to SF Trust to $12,000.00.    At that time, Defendant Penthouse also
8   increased Plaintiff's Slaughter's compensation by $20,000.00 annually.

9         13.   **Holland's Bad Faith Actions:** Even as Plaintiff Slaughter worked
10  tirelessly to launch and grow Defendant Penthouse's business, Defendant Holland
11  was doing everything humanly possible to offset the progress made by the
12  company.   Defendant Holland was abusive to Defendant Penthouse's employees,
13  engaging not only in daily verbal abuse of company personnel, but also more
14  extreme behavior such as giving male sexual enhancement pills to male employees
15  while stating that they needed them because they were all sexually dysfunctional
16  and placing canine excrement on the desk of Defendant Penthouse's in-house
17  counsel as a comment on the quality of this employee's work.   Defendant Holland
18  also terminated key members of the PGMI team, including the company's sole PHP
19  digital programmer,; its CTO; its production coordinator; and its Executive Editor,
20  based on interpersonal conflicts she had with them over a period of two months.   As
21  a result, PGMI had to frequently address employee complaints about Holland and
22  had substantial difficulty retaining employees.   Defendant Holland violated the
23  terms of Defendant Penthouse's loans by paying herself additional undisclosed
24  compensation, entering into agreements that caused the Company to incur more
25  debt and borrowing from PGMI's publishing distributor. Defendant Holland
26  ignored and dismissed the business plan developed by Plaintiff Slaughter and key
27  stakeholders in the Company.   She also purposefully refused to pay the Company's
28  lenders in full and refused to pay key vendors, including legal counsel.   In a final

stroke, Defendant Holland unilaterally terminated Plaintiff Slaughter's employment and Plaintiff SF Trust's consulting engagement on September 18, 2017.

## FIRST CAUSE OF ACTION

**(Breach of Written Employment Contract– Against Defendant Penthouse)**

14.   Plaintiffs refer to and incorporate herein by reference paragraphs 1 through 13 as though fully set forth herein.

15.   On February 23, 2016, Defendant Penthouse and Plaintiff Slaughter entered into a written Employment Agreement (Exhibit B).

16.   The Employment Agreement provides, "Your employment is for 5 years from the date of hire." The Employment Agreement does not provide for at-will employment and it does not provide for any circumstances under which Defendant Penthouse would be authorized to terminate Plaintiff Slaughter's employment prior to the expiration of the employment term.

17.   Plaintiff Slaughter performed all duties required of him under the Employment Agreement.

18.   On or about September 18, 2017, Defendant Penthouse breached the Employment Agreement by terminating Plaintiff Slaughter's Employment.

19.   As a result of Defendant Penthouse's breach of contract, Plaintiff Slaughter has been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

**(Breach of Written Consulting Agreement– Against Defendant Penthouse)**

20.   Plaintiff refers to and incorporates herein by reference paragraphs 1 through 19 as though fully set forth herein.

21.   Effective February 19, 2016, Defendant Penthouse and Plaintiff SF Trust entered into a written Consulting Agreement (Exhibit C).

22.   The Consulting Agreement provides, "The term of this Agreement shall be five years." The Consulting Agreement does not provide for any circumstances under which Defendant Penthouse would be authorized to terminate

1   the agreement prior to the expiration of the employment term.

2       23.    Plaintiff SF Trust performed all duties required of it under the

3   Consulting Agreement.

4       24.    On or about September 18, 2017, Defendant Penthouse breached the

5   Consulting Agreement by terminating its contractor relationship with Plaintiff SF

6   Trust.

7       25.    As a result of Defendant Penthouse's breach of contract, Plaintiff SF

8   Trust has been damaged in an amount to be determined at trial.

9                        **THIRD CAUSE OF ACTION**

10              **(Breach of Written Agreement– Against All Defendants)**

11      26.    Plaintiffs refer to and incorporate herein by reference paragraphs 1

12  through 25 as though fully set forth herein.

13      27.    On or around November of 2015, Defendant Holland, Defendant

14  Penthouse and Plaintiff Slaughter entered into the Acquisition Financing

15  Agreement, under which Plaintiff Slaughter would assist Defendant Penthouse in

16  the acquisition of the Penthouse brand and companies in exchange for consideration

17  that included a payment of 1.5% of the total consideration paid in the acquisition

18  upon close of the transaction.

19      28.    Plaintiff Slaughter performed under this oral agreement and the

20  acquisition closed on or around February 19, 2016.

21      29.    In breach of the terms of the oral agreement, Defendant Penthouse has

22  only paid Plaintiff Slaughter approximately $36,000.00 of the approximately

23  $142,000.00 owed under the Acquisition Financing Agreement.

24      30.    As a result of Defendant Penthouse's conduct, Plaintiff has been

25  damaged in an amount to be ascertained at trial.

26                      **FOURTH CAUSE OF ACTION**

27      **(Breach of Implied Covenant of Good Faith and Fair Dealing – Against**

28                          **Defendant Penthouse)**

31.     Plaintiffs refer to and incorporate herein by reference paragraphs 1 through 30 as though fully set forth herein.

32.     Effective February 19, 2016, Plaintiff SF Trust LLC entered into the Consulting Agreement with Defendant Penthouse.

33.     On or about February 23, 2016, Plaintiff Slaughter entered into an Employment Agreement with Defendant Penthouse.

34.     Implicit and implied in both the Consulting Agreement and the employment agreement between Defendant Penthouse and Plaintiff Slaughter, are covenants of good faith and fair dealing.

35.     Defendant Penthouse breached its covenants of good faith and fair dealing by terminating its agreements with Plaintiff Slaughter and Plaintiff SF Trust prior to the expiration of the contract terms.

36.     Defendant Penthouse also breached its covenants of good faith and fair dealing through the bad faith misconduct of its CEO, Kelly Holland, as alleged in Paragraph 13, above.

37.      As a result of Defendant Penthouse's actions, Plaintiffs have been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### (Wrongful Termination– Against Defendant Penthouse)

38.     Plaintiffs refer to and incorporate herein by reference paragraphs 1 through 37 as though fully set forth herein.

39.     Plaintiff Slaughter was employed by Defendant Penthouse pursuant to the Employment Agreement, which provided for a five-year term of employment. Plaintiff Slaughter alleges that this was a guarantee of employment that did not allow Defendant Penthouse to terminate him during the five-year duration of the contract. Nevertheless, Defendant Penthouse wrongfully terminated his employment on or about September 18, 2017.

COMPLAINT

40.     As a result of Defendant Penthouse's illegal conduct, Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment benefits, has incurred attorneys' fees and medical bills, all to his damage in excess of the minimum jurisdiction of this court, the precise amount to be proved at the time of trial. Plaintiff claims such amount as damages together with prejudgment interest pursuant to Civil Code Section 3287 and/or any other provision of law providing for pre-judgment interest.

41.     As a result of Defendant Penthouse's illegal conduct, Plaintiff Slaughter has suffered and continues to suffer substantial anxiety, humiliation, mental anguish, embarrassment, worry, sleeplessness, mental and emotional distress, loss of reputation, and other incidental damages and out-of-pocket expenses, all to Plaintiff's general damage in excess of the minimum jurisdiction of this court, with the precise amount to be proved at the time of trial.

42.     Defendant Penthouse, in performing the acts alleged above, acted with a conscious disregard of Plaintiff Slaughter's rights, and with the intent to vex, injure and annoy Plaintiff; such as to constitute oppression, fraud or malice under California Civil Code § 3294 thereby entitling Plaintiff Slaughter to exemplary or punitive damages.

## SIXTH CAUSE OF ACTION

### (Failure to Pay Wages – Against Defendant Penthouse)

43.     Plaintiffs refer to and incorporate herein by reference paragraphs 1 through 42 as though fully set forth herein.

44.     California Labor Code section 204(a) provides that all wages earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays.

45.     At all times relevant herein, Plaintiff Slaughter was promised compensation in the amount of 1.5% of the acquisition price of the Penthouse Brand and Companies under the terms of the Acquisition Financing Agreement (an

1    amount equal to approximately $142,000.00).

2         46.    Plaintiff Slaughter performed work for the benefit of Defendant

3    Penthouse under the Acquisition Financing Agreement, including, but not limited

4    to, assembling the financing instrument that was critical to Defendant Penthouse's

5    acquisition of the Penthouse brand and companies.

6         47.    To date, Defendant Penthouse has not paid all wages owed, having

7    only paid approximately $36,000.00 out of the approximately $142,000.00 owed to

8    Plaintiff Slaughter.

9         48.    Plaintiff is entitled to recover the unpaid balance of wages owed,

10   penalties, including penalties available pursuant to California Labor Code section

11   558, plus interest, and reasonable attorneys' fees and costs of suit according to

12   California Labor Code section 1194, *et seq*.

13                          **SEVENTH CAUSE OF ACTION**

14        **(Failure to Provide Itemized Wage Statements – Against Defendant**

15                                    **Penthouse)**

16        49.    Plaintiffs refer to and incorporate herein by reference paragraphs 1

17   through 48 as though fully set forth herein.

18        50.    California Labor Code section 226(a) provides that every employer

19   shall, semi-monthly or at the time of each payment of wages, furnish each of his or

20   her employees, either as a detachable part of the check, draft, or voucher paying the

21   employee's wages, or separately when wages are paid by personal check or cash, an

22   accurate itemized statement in writing showing gross wages earned.

23        51.    Plaintiff Slaughter is informed and believes, and based thereon alleges,

24   that throughout this time period, Defendant Penthouse repeatedly failed to furnish

25   accurate, itemized wage statements in writing showing all wages earned.

26        52.    As a result of Defendant Penthouse's conduct, Plaintiff Slaughter has

27   been damaged and is entitled to recover the greater of actual damages or $50.00 for

28   the initial pay period in which a violation occurred and $100.00 for each violation

in a subsequent pay period, not exceeding an aggregate penalty of $4,000.00, in an amount to be determined at trial.

53.     In addition, as a direct result of the conduct of Defendant Penthouse, Plaintiff was forced to incur substantial attorney's fees and costs which are recoverable under California Labor Code section 226(e) in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**

**(Failure to Pay All Wages Upon Termination – Against Defendant Penthouse)**

54.     Plaintiffs refer to and incorporate herein by reference paragraphs 1 through 53 as though fully set forth herein.

55.     Pursuant to California Labor Code sections 201-203, if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

56.     Plaintiff Slaughter is informed and believes, and based thereon alleges, that he was terminated from his employment with Defendant Penthouse and did not receive compensation for all wages owed at the time of termination, within the time limits set forth in California Labor Code sections 201-203.

57.     Therefore, Plaintiff is entitled to restitution and penalties as provided by California Labor Code section 203.

**NINTH CAUSE OF ACTION**

**(Breach of Fiduciary Duty – Against Defendant Holland)**

58.     Plaintiffs refer to and incorporate herein by reference paragraphs 1 through 57 as though fully set forth herein.

59.     Plaintiff Slaughter is a member of the board of directors of Defendant Penthouse and is a minority shareholder in the company, owning approximately 10% of the company's stock.

60.     Plaintiff Slaughter is informed and believes that Defendant Holland is the majority shareholder in Defendant Penthouse, holding 50% of the company's

stock. She has also served as Defendant Penthouse's Chief Executive Officer since its inception.

61.    Plaintiff alleges that, by virtue of her status as majority shareholder and CEO, Defendant Holland owes a fiduciary duty to all minority shareholders, including Plaintiff Slaughter.

62.    "There is a strong public interest in assuring that corporate officers, directors, majority shareholders and others are faithful to their fiduciary obligations to minority shareholders." *Meister v. Mensinger*, 230 Cal.App.4th 381, 395 (2014).

63.    Plaintiff is informed and believes, and thereon alleges, that Defendant Holland has breached her fiduciary duties by engaging in activities that include but are not limited to: consciously disregarding her duties to the Company, engaging in intentional acts with a purpose other than that of advancing the best interests of the corporation, engaging in self-dealing, failing to competently perform her duties as CEO, intentionally engaging in actions to disrupt and divide Defendant Penthouse's workforce, and failing to disclose transactions that violated Defendant Penthouse's contractual agreements.

64.    Plaintiff Slaughter is informed and believes, and thereon alleges that he has been damaged by Defendant Holland's actions in an amount to be proved at trial.

65.    Plaintiff Slaughter further alleges that an accounting is necessary to determine the extent of harm occasioned by Defendant Holland's actions and a constructive trust is necessary to prevent further harm.

### **TENTH CAUSE OF ACTION**

### **(Defamation – Against Holland)**

66.    Plaintiffs refer to and incorporate herein by reference paragraphs 1 through 65 as though fully set forth herein.

67.    Plaintiff is informed and believes, and thereon alleges, that in October of 2017 while attending the MIPCOM industry event, Defendant Holland stated to

one or more third parties who were not employed by Defendant PGMI that Plaintiff had "embezzled" and/or "stole" funds from Penthouse during his tenure as an employee of the Company.

68. Plaintiff is informed and believes, and thereon alleges, that Defendant Holland's defamatory statements were presented as statements of actionable fact and/or implied the existence of defamatory facts, based on the phrasing, context and understanding of the persons to whom the statements were directed.

69. Plaintiff is informed and believes, and thereon alleges, that Defendant Holland's defamatory statements were false, incorrect and/or incomplete.

70. Plaintiff is informed and believes, and thereon alleges, that Defendant Holland's statements were of a nature so as to harm Plaintiff's reputation, standing and esteem in the eyes of the person(s) to whom they were published and the adult entertainment industry in general.

71. Plaintiff is informed and believes, and thereon alleges, that Defendant Holland's statements were made with actual malice in that they were knowingly false and/or made with reckless disregard of their falsity.

72. As a result of Defendant Holland's illegal conduct, Plaintiff has suffered and continues to suffer substantial losses in earnings and financial opportunity and has suffered injury to his personal and professional reputation, all to his damage in excess of the minimum jurisdiction of this court, the precise amount to be proved at the time of trial. Plaintiff claims such amount as damages together with prejudgment interest pursuant to Civil Code Section 3287 and/or any other provision of law providing for pre-judgment interest.

73. As a result of Defendant Holland's illegal conduct, Plaintiff Slaughter has suffered and continues to suffer substantial anxiety, humiliation, mental anguish, embarrassment, worry, sleeplessness, mental and emotional distress, loss of reputation, and other incidental damages and out-of-pocket expenses, all to

Plaintiff's general damage in excess of the minimum jurisdiction of this court, with the precise amount to be proved at the time of trial.

74.     Defendant Holland, in performing the acts alleged above, acted with a conscious disregard of Plaintiff Slaughter's rights, and with the intent to vex, injure and annoy Plaintiff; such as to constitute oppression, fraud or malice under California Civil Code § 3294 thereby entitling Plaintiff Slaughter to exemplary or punitive damages.

WHEREFORE, Plaintiffs pray for judgment against Defendant Penthouse, Defendant Holland, and DOES 1 through 100, inclusive, and each of them, jointly and severally, as follows:

## ON THE FIRST CAUSE OF ACTION

1.     For lost wages and benefits and other monetary relief in an amount to be determined at trial;

2.     For compensatory damages in an amount to be determined at trial;

3.     For general and special damages in an amount to be determined at trial;

4.     For an accounting; and

5.     Attorneys' fees and costs in an amount to be determined at trial.

## ON THE SECOND CAUSE OF ACTION

1.     For monetary relief in an amount to be determined at trial;

2.     For compensatory damages in an amount to be determined at trial;

3.     For general and special damages in an amount to be determined at trial;

4.     For an accounting; and

5.     Attorneys' fees and costs in an amount to be determined

COMPLAINT

at trial.

## ON THE THIRD CAUSE OF ACTION

1. For lost wages and benefits and other monetary relief in an amount to be determined at trial;

2. For compensatory damages in an amount to be determined at trial;

3. For general and special damages in an amount to be determined at trial;

4. For an accounting; and

5. Attorneys' fees and costs in an amount to be determined at trial.

## ON THE FOURTH CAUSE OF ACTION

1. For monetary relief in an amount to be determined at trial;

2. For compensatory damages in an amount to be determined at trial;

3. For general and special damages in an amount to be determined at trial; and

4. Attorneys' fees and costs in an amount to be determined at trial.

## ON THE FIFTH CAUSE OF ACTION

1. For compensatory damages in an amount to be determined at trial;

2. For general and special damages in an amount to be determined at trial; and

3. For punitive damages in an amount to be determined at trial.

## ON THE SIXTH CAUSE OF ACTION

1. That the Court declare, adjudge, and decree that

Defendant Penthouse violated California Labor Code sections 204, 510, and 1194;

2.  For unpaid minimum, regular, overtime, and/or double time wages and such general and special damages as may be appropriate;

3.  For pre-judgment interest on any unpaid compensation commencing from the date such amounts were due until paid in full;

4.  For reasonable attorneys' fees and for costs of suit incurred herein; and

5.  For such other and further relief as the Court may deem fair and appropriate.

## ON THE SEVENTH CAUSE OF ACTION

1.  That the Court declare, adjudge, and decree that Defendant Penthouse violated California Labor Code section 226(a) and applicable IWC Wage Orders as to Plaintiff and Class members, and willfully failed to provide accurate, itemized wage statements thereto;

2.  For all actual, consequential, and incidental losses and damages according to proof;

3.  For statutory penalties, pursuant to California Labor Code section 226(e);

4.  For injunctive relief to ensure compliance with this section, pursuant to California Labor Code section 226(h); and

5.  For such other and further relief as the Court may deem fair and appropriate.

## ON THE EIGHTH CAUSE OF ACTION

1.   That the Court declare, adjudge, and decree that Defendant Penthouse violated California Labor Code sections 201, 202, and 203 and is subject to penalties pursuant to California Labor Code section 203;

2.   For an award of penalties pursuant to California Labor Code section 203 to Plaintiff and all Class members in an amount to be determined at trial; and

3.   For such other and further relief as the Court may deem fair and appropriate.

## ON THE NINTH CAUSE OF ACTION

1.   For compensatory damages in an amount to be determined at trial;

2.   For general and special damages in an amount to be determined at trial;

3.   For restitution of all profits and gains resulting from Defendant Holland's breach of fiduciary duty;

4.   Accounting;

5.   Constructive Trust; and

6.   For punitive damages in an amount to be determined at trial.

## ON THE TENTH CAUSE OF ACTION

1.   For compensatory damages in an amount to be determined at trial;

2.   For general and special damages in an amount to be determined at trial; and

3.   For punitive damages in an amount to be determined at trial.

## AS TO ALL CAUSES OF ACTION:

1.    For an award of reasonable attorneys' fees, costs, expert costs, and expenses pursuant to statutory and common law; and

2.    For such other and further relief as this Court may deem just, fair, and proper.

DATED: November 6, 2017

Respectfully Submitted,
ADEPT EMPLOYMENT LAW, APC

*/s/ Gregory P. Wong*
_____
Gregory P. Wong
Attorneys for Plaintiffs Slaughter and SF Trust, LLC

**DEMAND FOR JURY TRIAL**

       Plaintiff hereby demands a trial by jury as provided in Rule 38(a) of the Federal Rules of Civil Procedure.

DATED: November 6, 2017

Respectfully Submitted,
ADEPT EMPLOYMENT LAW, APC

*/s/ Gregory P. Wong*

_____
Gregory P. Wong
Attorneys for Plaintiffs Slaughter and
SF Trust, LLC